'UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: _____

MICHAEL J. LIGOTTI, D.O.,
WHOLE HEALTH, LLC

    Plaintiffs,

v.

UNITED HEALTHCARE SERVICES,
INC., a foreign Corporation, f/k/a United
Healthcare Services of Minnesota, Inc.,
UNITEDHEALTHCARE OF FLORIDA,
INC., a Florida Corporation, EMPIRE
HEALTH CENTER, INC., a Florida
Corporation, JUST RECOVERY, LLC,
and RECOVERY IN THE LIGHT, LLC,

    Defendants.
_____/

## DEFENDANTS' NOTICE OF REMOVAL

Defendants, United Healthcare Services, Inc. and UnitedHealthcare of Florida, Inc., (collectively, "United" or "Defendants"), pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, jointly file this Notice of Removal and allege:

**I.   INTRODUCTION**

    1.   On January 8, 2016, Michael J. Ligotti, D.O. and Whole Health, LLC, ("Plaintiffs") commenced this action in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-16-000372 (12). No summonses were issued as to the original complaint, and Defendants did not otherwise receive a copy of the original complaint.

\821527\238 - # 4007909 v1

2. On January 26, 2016, Plaintiffs filed an Amended Complaint and summonses were issued for the first time. Both United Healthcare Services, Inc. and UnitedHealthcare of Florida, Inc. were served with the Summons and operative Amended Complaint on February 16, 2016.

3. Defendants remove this case pursuant to 28 U.S.C. § 1441 as an action over which this Court has federal question jurisdiction under 28 U.S.C. § 1331. The state-law claims asserted against United in Plaintiffs' Amended Complaint are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

## II.   NATURE OF THE CASE

4. This is an action by a medical provider and a substance abuse treatment facility to recover health plan benefits for medical services provided to "United insureds." Am. Compl., ¶¶19, 25, 26. More specifically, Plaintiffs allege throughout the Amended Complaint that "United abruptly and improperly began denying and/or withholding payment on all claims submitted by Dr. Ligotti and WH for the services provided to United insureds at WH" . . . "even though United knows the services rendered to its insureds by Dr. Ligotti are covered and payable." Am. Compl., ¶¶25, 26, 41, 42, 59, 61. These allegations are realleged and incorporated by reference into each of the 29 counts of the Amended Complaint, including the first 19 counts which are specifically directed to United.

5. Plaintiffs are "out of network with all insurance carriers, including United" and as such, they do not have a direct or written provider contract with United. Am. Compl. at ¶¶23, 43.

6. Lacking any written contract with United, Plaintiffs contend they are entitled to payment for services provided to "United insureds *who have plans with out of network*

***benefits***." Am. Compl., ¶43 (emphasis added). In other words, in contending they are entitled to payment for services that are "covered" and "payable" under "United insureds'" health benefit plans, Plaintiffs are seeking to enforce the terms of those benefit plans. As Plaintiffs expressly allege, "Dr. Ligotti's patients who are insured by United, were parties to written insurance contracts whereby United agreed to cover and, directly pay medical care providers, such as Plaintiffs, for covered services provided to the United insureds by the medical providers." Am. Compl. ¶¶85, 157.

7. Although Plaintiffs' Amended Complaint contains the gamut of state-law claims sounding in tort, quasi contract, statute, and equity, the above-described theory of relief and general allegations ***are incorporated in every count*** of the Amended Complaint and form the crux of this action. The individual claims themselves also illustrate that Plaintiffs are seeking to enforce the terms of the health benefit plans at issue. *See e.g.* Counts IV and XIV for "Violation of Florida Statute §627.6131[1]" wherein Plaintiffs allege entitlement to benefits for "covered services to United insureds" based on their alleged status as "third party beneficiaries of the contracts between United and the United insured to whom Plaintiff provided medical services." Am. Compl. ¶¶85, 86, 157, 158. Plaintiffs further allege that United breached such "contracts" by violating Chapter 627, which is "incorporated into the insured's agreements with United." Am. Compl., ¶87, 159. *See also* Count VI for "Unfair Insurance Trade Practices" wherein Plaintiffs allege that "in connection with the processing of claims at issue in this case," United has not fulfilled its "obligations under the relevant insurance contracts." Am. Compl., ¶104. By way of further example, in Counts VII and VIII, Plaintiffs allege that they "have and continue to

---

[1] United is in no way conceding Florida Statute §627.6131 has any applicability to this case or that Plaintiffs have stated or can state a claim thereunder. Instead, United refers to this section of Plaintiffs' pleading to demonstrate that despite the state-law labels, Plaintiffs' allegations are, in substance, seeking to enforce the terms of the employer-sponsored health benefit plans at issue.

submit claims for reimbursement for services provided to Defendant, United's, insureds that are improperly and systematically denied by United" "even though United knows that the claims are payable thereby depriving Plaintiffs of the funds for the services rendered to United's insureds." Am. Compl., ¶110, 114, 115.

8. Despite the various state-law labels Plaintiffs have affixed to their claims, this action seeks to challenge the "processing and payment of claims" and enforce "the insured's agreements with United" and is therefore preempted by ERISA. Am. Compl. ¶¶88, 160.

### III. NATURE OF THE UNDERLYING HEALTH PLANS THAT FURNISH BENEFITS TO UNITEDS' MEMBERS

9. The Amended Complaint repeatedly refers to "United insureds" who received the alleged substance abuse treatment and related services in question. *See e.g.* Am. Compl., ¶¶19, 25, 26. These "insureds" include enrollees in "employee welfare benefit plans" within the meaning of the ERISA. *See* Declaration of Ngoc Han Nguyen ("Nguyen Declaration") together with the attached pertinent ERISA plan documents, attached hereto as Composite Exhibit "A."

10. An "employee welfare benefit plan" is statutorily defined at Section 1002(1) of Title 29 of ERISA as follows:

> Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer…to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (A) medical, surgical, or hospital care or benefits in the event of sickness, accident, disability, death, or unemployment….

Thus, an ERISA plan may be established by employers in one of two ways. Employers may create and fund their own health plans (i.e., self-funded), or employers may establish a plan "through the purchase of insurance."

11. Many of the ERISA plans that lie at the core of Plaintiffs' Amended Complaint for payment of benefits include self-funded welfare plans established by large employers and administered by United as a third party claims processor.[2] Nguyen Declaration, ¶¶2, 5. Under these self-funded plans, to the extent any medical expense benefits are eligible for payment, they are paid with assets belonging to the employer and its employees.

12. The procurement of a group insurance policy is "a common method by which employers provide [ERISA] health and welfare benefits to their employees." *Brundage-Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 511 (7th Cir. 1989). In fact, as the Eleventh Circuit recognized, "the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that [an ERISA] plan fund or program has been established." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (*en banc*); *see also Randol v. Mid-West Nat'l Life Ins. Co.*, 987 F.2d 1547, 1550-1551 n.5 (11th Cir. 1993) (noting that "a commercially purchased insurance policy under which the procedures of receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes.").

13. The very terms of the group health plans at issue demonstrate that ERISA plans exist here. A reasonable person can ascertain the following from a review of the Certificates of

---

[2] Since this action includes claims for benefits arising under "employee welfare benefit plans," the action encompasses federal questions under the doctrine of complete preemption. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 386 (1998): ("We have suggested that the presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal."); *see Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) ("Only those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions, but the presence of even one federal claim gives the defendant the right to remove the entire case to federal court.") (internal citations omitted); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) (same); and *Milwaukee Carpenter's District Council Health Fund v. Philip Morris*, 70 F.Supp.2d 888 (E.D. Wisc. 1999) (denying remand while noting that "[s]o long as any one claim concerned a federal question, the entire case could be removed" under the ERISA complete preemption doctrine).

Coverage and the Summary Plan Descriptions: (i) the plans were established by employers through the purchase of insurance or through a self-funded arrangement; (ii) the intended benefits are the medical expense benefits that are payable in accordance with the plan's terms; (iii) the class of beneficiaries are the eligible employees of employers who established the plans; (iv) the source of financing is the payment of premiums by the employer or self-funding by employers; and (v) the procedures for submitting claims and receiving benefits are those which are spelled out in the plans. *Fleming v. Metropolitan Life Ins. Co.*, No. 8:06CV88-T-23TBM, 2006 WL 709560, 2006 U.S. LEXIS 15156 (M.D. Fla. Mar. 16, 2006) (terms of group disability policy "persuasively demonstrate" that ERISA applies). *See also* Nguyen Declaration, ¶¶2-6 and Exhibits "A" through "S" attached thereto.

## IV. FEDERAL QUESTION JURISDICTION -- COMPLETE PREEMPTION

14.     This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' state-law claims are completely preempted by ERISA.

15.     Ordinarily, removal may not be accomplished unless the face of the complaint reveals a federal question. This general rule is known as the "well-pleaded complaint" rule. However, the United States Supreme Court recognized the doctrine of "complete preemption" as a corollary or an exception to the well-pleaded complaint rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). State court actions that come within the scope of § 502(a) of ERISA, 29 U.S.C. § 1132(a), such as a claim for improper denial of benefits under state law, are "displaced" by ERISA's civil enforcement mechanism and are therefore "removable to federal court" as actions that arise under the laws of the United States. *Metropolitan Life*, 481 U.S. at 58, 60; *see also Ehlen Floor Covering v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) ("Regardless of its characterization as a state law matter, a claim will be re-characterized as federal in nature if

it seeks relief under ERISA."). That is because, when a "federal statute [such as ERISA] completely preempts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

16. In this case, Plaintiffs' state law claims are "in reality based on federal law." *Id.* The claims are completely preempted because they "duplicate, supplement, or supplant" the ERISA civil enforcement remedy that Congress intended to be exclusive. *Id.* Put another way, the Plaintiffs' claims challenge the right to payment for a benefit allegedly "covered" by an employee welfare benefit plan. Accordingly, removal of this action which squarely implicates ERISA-plan benefits is consistent with ERISA's purpose "to provide a uniform regulatory regime over employee benefit plans." *Id.*

17. As the allegations summarized above make clear, this action presents a question of whether health plan benefits are owed for charges for certain substance abuse disorder and related mental health services allegedly provided to ERISA plan participants. Plaintiffs assert a right to payment and challenge the way in which the ERISA plans were administered by the Defendants.[3] A lawsuit such as this one to recover benefits that stem from numerous ERISA plans falls within the scope of 29 U.S.C. § 1132(a)(1)(B). *E.g., Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009) (applying *Davila* while finding that ERISA completely preempted providers' state-law claims for breach of contract, breach of good faith and fair dealing, and unjust enrichment); *Borrero v. United Healthcare of N.Y.*, 610 F.3d 1296 (11th Cir. 2010) (applying *Davila* while finding that ERISA completely preempted

---

[3] For example, the Provider Explanation of Benefits attached as Exhibit "A" to Plaintiffs' Amended Complaint and upon which this action is allegedly based demonstrate that the amounts charged by Plaintiffs were "not covered" under the ERISA plans and as such "0.00" was paid to the provider for the services at issue.

physicians' state law claims for breach of contract where physicians alleged a failure to pay the proper contracted rate in violation of common and statutory law).

18.  In addition, Plaintiffs expressly allege they have received assignments of benefits from their patients authorizing United to pay Plaintiffs directly for the claims at issue. Am. Compl., at Exhibit "B," pg. 2. *See also* Nguyen Declaration, at ¶3. Thus, Plaintiffs qualify as a "beneficiaries" of the health plan as defined in § 1002 of ERISA. *Cagle v. Bruner*, 112 F.3d 1150 (11th Cir. 1997) (recognizing that healthcare providers may acquire derivative standing to sue under ERISA based upon written assignments from the patient who participates in the plan).

19.  Accordingly, based upon the claims and allegations pled in the Amended Complaint, this case is removable under ERISA. *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010) (ERISA completely preempted health care providers' state law Complaint where at least some of the allegations related to an ERISA benefit plan and the interpretation of the terms of that plan formed an essential part of the state law claims for relief).

V.  **SUPPLEMENTAL JURISDICTION**

20.  The vast majority of the underlying medical claims in this case are subject to complete as well as defensive preemption under ERISA since at least 19 of the 21 benefit plans at issue are governed by ERISA. However, to the extent there are claims for benefits which implicate non-federally governed plans, and to the extent the claims asserted against United's co-defendants are not preempted by ERISA, any such claims are properly before this Court under its supplemental jurisdiction and thus removal of Plaintiffs' Amended Complaint in its entirety is appropriate. *See* 28 U.S.C. § 1367(a); *see also Current Wave Medical Sys., Inc. v. Cigna Corp.*, No. 8:07-cv-1102-T-26EAJ, 2007 WL 5389120, *3, n.1 (M.D. Fla. Aug. 3, 2007).

## VI.   COMPLIANCE WITH PROCEDURE FOR REMOVAL

21.   Defendant, Recovery in the Light, LLC, joins in and consents to the removal of this action. *See* executed Consent to Removal attached hereto as Exhibit "B."

22.   Defendant, Just Recovery, LLC, does not appear to have been served. Just Recovery, LLC, is listed as "inactive" with the Division of Corporations. *See* Ex. "C." The undersigned counsel made attempts to contact the listed registered agent for Just Recovery, LLC to determine whether it has been served; however, the available telephone numbers associated with such agent are either incorrect or out of service. Additionally, as of March 17, 2016, the docket sheet does not reflect a return of service for Just Recovery, LLC. *See* Ex. "D." If and when Just Recovery, LLC is served, United will determine if it consents to this removal.

23.   Defendant, Empire Health Center, Inc., ("Empire") has not been served. On March 14, 2016, Plaintiffs filed a return of service in the state court action indicating that Empire was served through its registered agent, Roberto Juan Escobio, via substitute service on March 2, 2016. *See* Ex. "E." The undersigned counsel contacted Mr. Escobio to determine whether Empire consents to this removal. Mr. Escobio acknowledged receipt of the amended complaint but advised the undersigned counsel that he is not the registered agent for Empire, has never heard of or been involved or affiliated with Empire, and is not authorized to accept service, represent its interests, or consent to removal on its behalf. *See* Ex. "F." As a result, Empire Health Center, Inc. has not in fact been served notwithstanding the return of service of record in the state court action. If and when Empire Health Center, Inc. is served, United will determine if it consents to this removal.

24.   In accordance with 28 U.S.C. § 1446(a), a copy of the Amended Complaint, Summonses, and discovery served on United is attached hereto as Composite Exhibit "G."

25. This Notice of Removal is timely filed in accordance with 28 U.S.C. §1446(b) since it is being filed within 30 days after Defendants' receipt of a copy of the initial pleading (the Amended Complaint).

26. Defendants will give written notice of the Notice of Removal to Plaintiffs and will file a copy of the Notice of Removal with the Clerk of Court for Broward County, Florida pursuant to 28 U.S.C. § 1446(d). *See* Notice of Filing Notice of Removal attached hereto as Ex. "H."

27. Venue is proper in the Southern District of Florida, as the Circuit Court in which the action is pending is within the jurisdictional confines of the Southern District. *See* 28 U.S.C. §1446(a) and 28 U.S.C. § 1441(a).

28. This notice of removal is signed pursuant to and complies with Rule 11 of Federal Rules of Civil Procedure.

29. Defendants have paid the required removal fee.

30. Defendants respectfully reserve all their defenses and rights.

## VII.   CONCLUSION

31. This action is properly removed from state court as a civil action in which this Court has original jurisdiction based on "completely preempted" claims arising under the laws of the United States. It is removable without regard to the citizenship or residence of the parties.

32. No previous application has been made for the relief prayed for in this Notice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2016 the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that I emailed the foregoing document to: Walter G. Campbell, Jr., Esq. and Brent M. Reitman, Esq., Krupnick, Campbell, Malone, Buser, Slama, Hancock, Liberman, P.A., 12 S.E. Seventh Street, Suite 801, Fort Lauderdale, FL 33301, telephone number 954-763-8181 (pleadings-wgc@krupnicklaw.com) *counsel for Plaintiff*; and, Anne Chapman, Esq., Blalock Walters Attorneys at Law, 802 11th Street West, Bradenton, FL 34205, telephone number 941-748-0100 (achapman@blalockwalters.com) *counsel for Defendant, Recovery in the Light, LLC.*

 

Shari Gerson, Florida Bar No. 017035
Email: shari.gerson@gray-robinson.com
Shayna Freyman, Florida Bar No. 84993
Email: Shayna.freyman@gray-robinson.com
GRAY ROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 761-8111
Facsimile: (954) 761-8112

*Counsel for United*